UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ERIC L. JOHNSON p/k/a "E. BASS,"                            :
                                                            :
                    Plaintiff,                              :
                                                            :
            v.                                              :     **MEMORANDUM**
                                                            :     **AND ORDER**
ARISTA HOLDING, INC. d/b/a SONY BMG                         :
MUSIC ENTERTAINMENT,                                        :     05 Civ. 9645 (LBS)
BERTELSMANN MUSIC GROUP, INC.,                              :
SONY BMG MUSIC ENTERTAINMENT (US LATIN) LLC,                :
JUSTIN SMITH p/k/a "JUST BLAZE,"                            :
F.O.B. MUSIC PUBLISHING, INC., and                          :
N.Q.C. MUSICI PUBLISHING, LLC,                              :
                                                            :
                    Defendants.                             :
------------------------------------------------------------------------x

SAND, J.

Plaintiff Eric Johnson, professionally known as "E-Bass," brings this action for copyright infringement or, in the alternative, an accounting from joint authors against defendants Justin Smith (a songwriter and music producer know as "Just Blaze"), FOB Music Publishing, Inc. and NQC Music Publishing, LLC (music publishing companies controlled by Smith), and various record companies. Plaintiff claims that defendants exploited his contribution to a musical composition without authorization. Before the Court is the defendants' motion for summary judgment.

I

In March 28, 2003 in Los Angeles, California, defendant Justin Smith created a ProTools music file that contained an edited and manipulated sample of Dionne Warwick's 1973 recording of the song "You're Gonna Need Me," as well as some sound effects and drum sounds. Smith submitted this composition to the popular rap musician Usher Raymond for his consideration in

1

October 2003.  Usher decided to include the composition, which eventually became a portion of the song "Throwback," on his album "Confessions."

In a series of late night sessions in February 2004 at Baseline Recording Studios in New York, Smith worked with an engineer named Kenneth Lewis, Usher, and plaintiff Eric Johnson to turn the composition contained in the ProTools file into the final version and recording of Throwback that would appear on the album Confessions.  Smith and Lewis edited and blended certain elements of the composition and added vocal tracks sung by Usher and musical tracks performed by Lewis and plaintiff in the studio.

Plaintiff's first involvement with the Throwback composition was at these recording sessions with Smith.[1]  The exact timing of these sessions and the extent of plaintiff's involvement is unclear.  Defendants claim that Smith and Lewis started work on mixing and arranging the composition on February 12 and into the early morning hours of February 13.  (Def.'s Mem. in Support at 4.)  Smith and Lewis returned to the studio on February 15 and worked through the night and into the morning of February 16.  (Id.)  Defendants claim that at approximately 1:00 a.m. on February 16, plaintiff joined them in the studio and played various guitar and piano parts in a number of different ways at Smith's direction.  (Id. at 5.)  Smith chose which takes to include on the recording.  (Id.)  Plaintiff then left the studio around 5:00 a.m. and Smith and Lewis stayed and continued to work on the composition.  (Id.)  Later in the day on February 16, Usher came to the studio and recorded several vocal tracks which Smith and Lewis mixed into the recording.  (Id.)

---

[1] Plaintiff does not claim that he independently created the composition, which he titled "Let's Go All the Way" and later registered with the copyright office, prior to working with Smith in February 2004.  Initially, plaintiff indicated that he thought he began work on the composition in October or November of 2003, but that he believed the studio session logs would have the exact dates.  In his more recent papers, however, plaintiff states that his work on the composition began in February 2004.  (See Pl.'s Mem. in Opp. at 10.)  Plaintiff does not dispute that Smith was present during each session at which he worked on the composition.  (Id.)

Plaintiff states that he recalls working on the Throwback composition during three separate sessions at Baseline Studios.[2] (Pl.'s Mem. in Opp. at 22.) He does not recall exactly when these sessions were, but instead relies on the studio logs and affidavits of Smith and Lewis to claim that these sessions occurred from February 15 through February 17. (Id. at 10-11.) Unfortunately the session logs shed little light on the situation because they are internally inconsistent and cover overlapping time periods, but they seem to indicate that plaintiff was present at the recording studio for some periods before and after the 1:00 a.m. to 5:00 a.m. window on February 16. (See Camacho Decl., Ex. E.) Plaintiff claims that he was present at a session with Usher (see Johnson Decl. ¶ 15) and that his work on the composition was completed on February 17, the same day the final version of Throwback was completed. (See Pl.'s Mem. in Opp. at 21.)

On February 18, 2004, plaintiff submitted a form to his union, the American Federation of Musicians (AFM), for compensation as a "session musician" in connection with his work on Throwback. The form stated that plaintiff played guitar as a session musician on February 16, 2004 from 1:00 a.m. to 5:00 a.m. and listed "Just Blaze" (Smith) as producer. (Camacho Decl., Ex. D.) On June 24, 2004, plaintiff was issued a check for $1,065.15 for four hours work as a session musician, which he cashed. (Id.) The form explicitly incorporated the terms of American Federation of Musicians Agreement, which states that any work performed as a

---

[2] At oral argument, counsel for plaintiff stated that plaintiff worked on the Throwback composition "on at least five or six other occasions according to [defendants'] documents" in addition to the session from 1:00 a.m. to 5:00 a.m. on February 16. (Oral Arg. Tr. at 22.) This claim is misleading. These "occasions," as plaintiff sets forth in his brief, are:
    (i) February 15, 2004, from 10:00 p.m. to 6:30 a.m.; (ii) February 15, 2004, beginning at 2:00 a.m. or 3:00 a.m.; (iii) February 16, 2004, from 12:00 a.m. to 11:00 a.m.; (iv) February 16, 2004; (iv) [sic] February 17, 2004 from 12:30 a.m. to 11:30 a.m.; and (v) February 17, 2004.
(Pl.'s Mem. in Opp. at 10-11. (internal citations omitted).) These time periods are, of course, internally inconsistent and overlap substantially. Moreover, plaintiff seems to consider as an "occasion" each mention of the plaintiff's presence in the session logs or affidavits of defendants' witnesses despite the fact that they are clearly duplicative.

3

session musician is "work-made-for-hire" for copyright purposes.[3] (Id.; Datsi Decl., Ex. E at 10 ¶ 26.)

Plaintiff does not dispute that he was employed as a session musician under the terms of the AFM Agreement for a four hour period on February 16. He asserts, however, that he was not performing as a session musician for the entire time that he worked on the Throwback composition, and therefore the AFM Agreement is not applicable to plaintiff's contributions that were made outside of that four hour window. Plaintiff had worked with Smith on several prior occasions, and claims that he and Smith had an agreement that they would share producer credit and authorship rights on musical compositions that they created together. (Pl.'s Mem. in Opp. at 8.) Plaintiff states that he believed that his work on Throwback was covered by this agreement and that he would receive producer credit and authorship rights for his contribution to the composition in addition to his payment for four hours of work as a session musician. (Id. at 11.)

There is no dispute that plaintiff played several instruments (including keyboard and guitar) at Smith's direction, but the extent of plaintiff's creative contribution to the composition is at issue. Plaintiff claims that he played original notes and chords that constitute the original musical portion (as opposed to the sampled music) of the Throwback composition. (Id. at 10.) Defendants claim that plaintiff added no original creative content to that which Smith had embodied in the ProTools file. (Def.'s Mem. in Support at 8.)

On June 15, 2004, defendants registered the Throwback composition with the U.S. Copyright Office, listing Smith as a coauthor. (Datsi Decl., Ex. D.) The registration did not list

---

[3] The relevant provision states:
    26. Work-Made-For-Hire
    All of the results and proceeds of the services provided under this agreement, whether in writing or recorded, are and shall be deemed "works-made-for-hire" for the Company. Accordingly, the Company shall be deemed the author and/or exclusive owner of all of the rights comprised in the copyright thereof, and the Company shall have the right to exploit any or all of the foregoing in any and all media, whether now known or hereafter invented, as the Company determines.
(Datsi Decl., Ex. E at 10 ¶ 26, Sound Recording Labor Agreement.)

4

plaintiff as a coauthor.  Usher's album Confessions, containing the song Throwback, was a commercial success, selling over nine million copies.

On October 25, 2005, plaintiff registered what he claims were his musical contributions to the Throwback composition with the Copyright Office under the title "Let's Go All the Way. (See Chin Decl.)  Plaintiff registered only the *composition*, not his contributions to the *recording* of Throwback.[4]  The deposit copy that plaintiff submitted with his registration contained what he claims are his musical contributions to the Throwback composition and the Dionne Warwick sample, but not the lyrical portion of the composition.  Defendants have offered a report from an expert musicologist saying that plaintiff's deposit copy contains no original copyrightable elements that are not also contained on the March 28, 2003 ProTools file.  (Ferrara Decl. ¶¶ 3-8.)  Defendants served notice of their expert and his report on the deadline for discovery and simultaneously moved for summary judgment.  Plaintiff has not had an opportunity to depose defendants' expert, and has not submitted an expert report of his own.

II

Plaintiff raises two alternative and mutually exclusive claims:  (1) that defendants infringed his copyrighted interest in his musical contributions to the Throwback composition or (2) that he is a joint author of the Throwback composition and thus entitled to an accounting for the profits made by defendants in its exploitation.[5]  Defendants argue first that both claims must be dismissed because plaintiff did not make any creative contribution to the Throwback

---

[4] There are two separate copyrightable interests in a work of music:  (1) the underlying musical composition, and (2) the master recording or physical embodiment of a musical performance.  6 Melville V. Nimmer & David Nimmer, Nimmer on Copyright § 30.01.  The Copyright Office has separate forms for registering a copyright in the composition only and in the recording and composition together.  Plaintiff used form PA which applies only to copyrights in compositions.  (See Chin Decl. ¶ 7 & Exs. B-C.)

[5] Because plaintiff does not appear to argue that he has any interest in the *recording* of Throwback, the Court expresses no opinion on the matter.

5

composition that is sufficiently original to be copyrightable.[6]  And second, even if he had, because of Smith's work on the piece, plaintiff's contribution would make him at most a joint author, and thus his copyright claims must be dismissed, leaving only an action for an accounting against Smith.  Because it is the more obvious claim, we deal with joint authorship first.

A.  *Joint Authorship*

The Copyright Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101 (2000).  Two or more contributors to a work are "joint authors" if each of them "(1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors."  Thompson v. Larson, 147 F.3d 195, 200 (2d Cir. 1998) (citing Childress v. Taylor, 945 F.2d 500, 507-08 (2d Cir. 1991)).[7]  Joint authors each own an undivided interest in the joint work and each has "the right to use or license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made." Thompson, 147 F.3d at 199.  A joint author cannot maintain a copyright infringement action against another joint author.  Donna v. Dodd, Mead & Co., 347 F. Supp. 429 (S.D.N.Y. 1974).

---

[6] Defendants also argue that they could not have copied plaintiff's composition because the alleged infringing composition existed prior to the time when plaintiff claims he created his composition.  Plaintiff, however acknowledges that Smith's ProTools file existed before he began work on the Throwback composition.  He does not claim that defendants copied his work.  Rather he claims that he added creative elements to the Throwback composition during the sessions with Smith at Baseline Studios.  Defendants' access argument is therefore inapposite.

[7] There has been criticism of the requirement that a contribution must be independently copyrightable to support a claim of joint authorship because it arose as dictum in the Childress case, see 1 Nimmer on Copyright § 6.07(A)(3) (advocating a lesser standard of "more than a de minimis contribution"), and at least one court has rejected the requirement, see Gaiman v. McFarlane, 360 F.3d 644 (7th Cir. 2004), but because it would not be dispositive on this motion, the Court expresses no opinion on the issue.

*1. Extent of Contribution*

Defendants argue that plaintiff's contributions to the Throwback composition are not original enough to be independently copyrightable. In support of this claim they offer the opinion of an expert musicologist saying that the deposit copy (which plaintiff submitted to the Copyright Office and claims contains his contributions to the Throwback composition) "does not add any new original expression to the underlying composition embodied in the March 28, 2003 Pro Tools file of 'Throwback.'" (Ferrara Decl. ¶ 8.) Defendants argue that because plaintiff failed to submit an expert report or even his own testimony pointing to original compositional elements on the deposit copy, they are entitled to summary judgment.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A nonmoving party who bears the burden of proof at trial must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. There is only a "genuine issue" of fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986).

Defendants argue that because plaintiff has not offered any evidence to rebut their expert report, he has not raised a genuine issue of material fact as to the extent of his contribution. Plaintiff argues that he has not had a sufficient opportunity for discovery to oppose adequately defendants' motion on this issue because defendants served notice of their expert report on the last day of the discovery period and simultaneously moved for summary judgment.

Rule 56(f) allows a court to deny summary judgment or order a continuance if the nonmoving party has not had an opportunity to make full discovery. Celotex, 477 U.S. at 326.

The Supreme Court has stressed Rule 56(f) as an important safety valve to prevent nonmovants from being "railroaded" by a premature summary judgment motion.  Id.; see also Anderson, 477 U.S. at 250 n.5 (Rule 56(f) provides that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.").  To obtain relief under Rule 56(f), the nonmoving party must submit an affidavit explaining: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what efforts the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."  Hudson River Sloop Clearwater, Inc. v. Department of the Navy, 891 F.2d 414, 422 (2d Cir. 1989).

In his affidavit, plaintiff's counsel states that to rebut adequately defendants' expert report, he will need to depose defendants' expert and retain his own musicologist to show that plaintiff did, in fact, make copyrightable contributions to the Throwback composition.  (See Second Chin Decl. ¶¶ 6-10.)  Because the parties were operating on an expedited discovery schedule and plaintiff did not receive defendants' expert report until the last day of the discovery period and was simultaneously served with the motion for summary judgment, plaintiff did not have an adequate opportunity to complete discovery on an issue that may be dispositive and is likely to present a genuine issue of material fact.  Granting summary judgment would be inappropriate in such a situation.  The purpose of summary judgment is to promptly dispose of cases where the record shows that there is no genuine issue of fact, not to prematurely decide cases on an incomplete record.

*2. Intent To Be Joint Authors*

To establish joint authorship, the putative joint author must also show that the contributors to the work intended to be joint authors. See Thompson, 147 F.3d at 200. Defendants argue that plaintiff has conceded, in the facts that he alleges, that plaintiff and defendant Smith had the requisite intent to create a joint work. (Def. Reply Mem. at 5-6.) Because plaintiff admits that he and Smith worked together on the composition and claims that he and Smith had an agreement to create compositions together and share producer credit and publishing income, taking the facts as plaintiff alleges them, it is clear that he and Smith had the intent to be joint authors.

Defendants (including Smith), however, have not conceded that Smith had the requisite intent to be a joint author with plaintiff. In fact they claim that plaintiff made no creative contribution to the Throwback composition and that Smith never agreed to share producer credit and publishing income with plaintiff on this work. Moreover, defendants claim that plaintiff was paid as a session musician for his work on Throwback and therefore is not entitled to any ownership interest in the composition because it was a work-made-for-hire.[8] There are, therefore, genuine issues of material fact as to whether plaintiff and Smith shared the requisite intent to be joint authors of the Throwback composition.

*B. Copyright Infringement*

*1. Defendants' Argument that Plaintiff Has Alleged At Most a Joint Authorship*

Defendants go on to argue that because plaintiff has conceded that he intended to be a joint author with Smith, and because it is undisputed that Smith authorized the record company

---

[8] The Copyright Act provides that when a work is a work-made-for-hire, "the employer or other person for whom the work was prepared is considered the author for purposes of this title." 17 U.S.C. § 201.

9

defendants to exploit the composition, that all of his copyright infringement claims must be dismissed.  The joint authorship claim and copyright infringement claims are mutually exclusive; plaintiff would not be able to maintain an infringement action against his coauthor, see Donna, 347 F. Supp. 429, nor could he maintain an infringement action against his coauthor's licensees or transferee.  See Geshwind v. Garrick, 743 F. Supp. 644, 651 (S.D.N.Y. 1990), aff'd mem., 927 F.2d 594 (2d Cir. 1991); 1 Nimmer on Copyright §§ 6.10-6.11.  Defendants argue that plaintiff has alleged *at most* a joint authorship and therefore his copyright claims against Smith and the record company defendants must be dismissed.

     Defendants' argument is unavailing because they do not concede that Smith intended to be a joint author with plaintiff.  The fact that plaintiff intended to be a joint author with Smith does not necessarily preclude his claim for copyright infringement.  In Thompson v. Larson, the Second Circuit left open the question of whether a person who makes a copyrightable contribution to a work, but cannot meet the mutual intent requirements of joint authorship nonetheless retains a copyright interest in his individual contribution to the collective work.  147 F.3d at 206.  The plaintiff in Thompson was a dramaturg who made significant contributions to the Broadway musical Rent.  The court found that the playwright intended to be the sole author of the show and did not intend to share joint authorship status with the dramaturg.  Id. at 205.  The dramaturg then went on to argue that if she was not a joint author, then she must be the sole author of her own copyrightable contribution.  Id. at 205-06.  The Second Circuit declined to rule on the issue because the dramaturg had not pled copyright infringement and the issue was not raised before the district court.  Id. at 206.

     In this case, plaintiff has alleged joint authorship and copyright infringement as alternative grounds for relief.  Cf. Maurizio v. Goldsmith, 230 F.3d 518, 519 (2d Cir. 2000)

(noting that complaint rested on two alternative and mutually exclusive theories: that plaintiff is joint author with defendant and that defendant infringed on plaintiff's copyright); Ulloa v. Universal Music & Video Distribution Corp., 303 F. Supp. 2d 409, 419 (S.D.N.Y. 2004) (construing claim of joint authorship as a claim in the alternative to copyright infringement claim). Because the parties have not addressed the issue left open in Thompson in their papers and further factual development may make it unnecessary to reach the issue at all, the Court does not express any opinion on the matter at this time.

### 2. *Defendants' Additional Arguments*

Defendants argue that they are entitled to summary judgment on plaintiffs claim for copyright infringement for three additional reasons: (1) plaintiff's contribution to Throwback as embodied on the deposit copy lacks sufficient originality to be copyrightable, (2) plaintiff's copyright registration was a fraud on the Copyright Office, and (3) plaintiff's contribution was a work-made-for hire.

As noted above, defendants are not entitled to summary judgment on the theory that plaintiff's contribution lacked sufficient originality because plaintiff has not had a sufficient opportunity for discovery that could raise a genuine issue of material fact.

A copyright registered with the Copyright Office is entitled to a presumption of validity. 17 U.S.C. § 410(c); Gaste v. Kaiserman, 863 F.2d 1061, 1064 (2d Cir. 1988). That presumption can be rebutted if the party applying for the registration knowingly makes a misrepresentation to the Copyright Office that rises to the level of fraud. Russ Berrie & Co. v. Jerry Elsner Co., 482 F. Supp. 980, 988 (S.D.N.Y. 1980). "Only the knowing failure to advise the Copyright Office of fact which might have occasioned a rejection of the application constitute[s] reason for holding

the registration invalid and thus incapable of supporting an infringement action." Ekes v. Card Price Update, 736 F.2d 859, 861-63 (2d Cir. 1984). Defendants claim that plaintiff's registration of Let's Go All the Way was a fraud on the Copyright Office because it failed to indicate that it contains a sample of Dionne Warwick's recording, because it failed to indicate that the work had been previously registered, and because he was not the author of any original work. As we have already noted, defendants are not entitled to summary judgment on the issue of originality. While plaintiff does not dispute that he did not indicate in his registration that the composition included a sample or that the work was previously registered, this omission hardly rises to the level of a fraud on the Copyright Office. In fact, plaintiff had indicated all of this information in a previous application for registration. He only omitted it, he alleges, at the direction of an employee of the Copyright Office who instructed him to re-file his application. (See Chin Decl. ¶¶ 6-8, Exs. A-D.) Defendants have not shown that plaintiff has made the kind of knowing violation that would entitle them to summary judgment on this issue.

Finally, defendants argue that because plaintiff was paid as a session musician for his work on Throwback on February 16 from 1:00 a.m. to 5:00 a.m., his contribution was a work-made-for-hire.[9] The Copyright Act provides that when a work is a work-made-for-hire, "the employer or other person for whom the work was prepared is considered the author for purposes of this title." 17 U.S.C. § 201. Plaintiff does not dispute that he worked as a session musician for that period of time, however he claims that he did additional work on Throwback for which he was not compensated. Plaintiff points to the session logs as evidence that he was present in the studio for some period of time before and after the 1:00 a.m. to 5:00 a.m. window. While the

---

[9] Defendants raise this argument in the context of the Throwback *recording*, but as plaintiff has not argued that he has any interest in the recording, we consider it in the context of the Throwback composition. Plaintiff has also asserted that the terms of the AFM Agreement, under which he worked as a session musician, do not preclude him from having an ownership interest in the *composition*. As defendants have not addressed the applicability of the AFM Agreement in the context of the composition, the Court expresses no opinion on the matter.

12

Court does not adopt plaintiff's characterization of these logs as evidence of five or six sessions, see supra note 2, they are sufficient to create an issue of fact as to whether there are time periods that he worked on the composition in another capacity and therefore outside the scope of the AFM Agreement.

III

Plaintiff raises two noncopyright state law claims for (1) fraudulent inducement of services, and (2) unjust enrichment. (Compl., counts VI & VII.) The Copyright Act preempts all state and common law causes of action that provide for rights "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" of the Act. 17 U.S.C. § 301(a); see Kregos v. Associated Press, 3 F.3d 656, 666 (2d Cir. 1993) ("A state cause of action is preempted by federal copyright law if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law."), cert. denied, 510 U.S. 1112 (1994). Common law causes of action are generally preempted when they seek damages that are identical to those sought for copyright infringement. See, e.g., Bucklew v. Hawkins, Ash, Baptie & Co., 329 F. 3d 923, 934 (7th Cir. 2003).

Plaintiff's state law claims are preempted because they do no more than seek to vindicate the same rights as plaintiff's copyright claims. See Morris v. Buffalo Chips Bootery, Inc., 160 F. Supp. 2d 718, 721 (S.D.N.Y. 2001). Plaintiff claims that he was fraudulently induced to work on Throwback because he expected to receive producer credit and royalties for his contribution to Throwback and its exploitation. (Compl. ¶¶ 100-02.) Likewise, he claims that defendants were unjustly enriched because they exploited Throwback without paying him the fees and royalties

he is owed for his work as "author, composer, producer, arranger and/or creator." (Compl. ¶¶ 112-13.) These claims are merely duplicative of the rights he asserts under the Copyright Act and therefore must be dismissed.[10]

IV

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is denied as to plaintiff's claims of copyright infringement and joint authorship. Summary judgment is granted as to counts VI and VII of the complaint and plaintiff's claims for fraudulent inducement of services and unjust enrichment are dismissed.

The parties are directed to submit to the Court a proposed discovery schedule with regard to the issue of originality by December 20, 2006.

**SO ORDERED.**

Dated: December 5, 2006
New York, NY

_____
Leonard B. Sand
U.S.D.J.

---

[10] In his response brief, plaintiff argues that if he is found to have no copyright interest in the Throwback composition, then defendants failed to reasonably pay him for his time and services. The complaint, however, contains no claim based on the value of plaintiff's time and services. It seeks only producer credit, fees, and royalties stemming from the exploitation of plaintiff's contribution to the Throwback composition. (Compl. ¶¶ 101, 111.)

14